IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELISA FERRARO, | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| MARTIN O'MALLEY,[1] | : No. 21-cv-4674-RAL |
| Commissioner of Social Security | : |
| Defendant | : |

**RICHARD A. LLORET**                                          **March 4, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

      The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Elisa Ferraro's application for Social Security disability insurance benefits and supplemental security income. The ALJ determined that Ms. Ferraro was able to do sedentary work with some restrictions and so was not disabled under the definition of the Social Security Act. R. 29.[2] Ms. Ferraro now requests review of the ALJ's decision, alleging that the ALJ erred in her treatment of the medical opinions in the record and improperly discounted Ferraro's testimony regarding the extent of her impairments in evaluating her disability. Doc. No. 9[3]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as Defendant. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All references to the administrative record will be listed as "R. ____". The administrative record is document number eight on ECF.

[3] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

1

("Pl. Br."), at 6, 11. After careful review, I find that the ALJ's decision is supported by substantial evidence and affirm.

## PROCEDURAL HISTORY

On April 2, 2029, Ms. Ferraro filed a claim for Disability Insurance Benefits and Supplemental Insurance Income, alleging a disability onset date of June 7, 2017. R. 17. Ms. Ferraro alleges that she is unable to work due to severe symptoms relating to fibromyalgia, muscle/ligament disorder of the right upper extremity, and disorders of the spine. *See* Pl. Br. at 4. Ms. Ferraro's application was denied initially on July 16, 2019 and on reconsideration on November 19, 2019. R. 15. Ms. Ferraro requested a hearing before an ALJ, which was held on July 17, 2020. R. 15, 36–75. Ms. Ferraro, who was represented by counsel, testified at the hearing through the assistance of an interpreter. R. 37. A vocational expert also appeared and testified. R. 36. Following the hearing, the ALJ found that Ms. Ferrero was not disabled under the Social Security Act during the relevant period. R. 29. On November 17, 2020, the Appeals Council denied Ms. Ferraro's request for review, making the ALJ's determination a final determination. *See* R. 1–6. Ms. Ferraro then filed an appeal in this court. *See* Doc. No. 1.

## FACTUAL BACKGROUND

### I. The Claimant's Background

Ms. Ferraro was thirty-five years old on the alleged disability onset date, making her a "younger person" under the regulations. R. 27; 20 C.F.R. §§ 404.1563. Ms. Ferraro has at least a high school education and has past relevant work as a cook helper and a supermarket clerk. R. 27. In June 2017, Ms. Ferraro was in a motor vehicle accident which caused her to be out of work for six months. R. 17. While Ms. Ferraro did continue working as a supermarket clerk after her alleged disability onset date, she did not work

2

consistently and so her earnings did not amount to substantial gainful activity as defined under the regulations. R. 17–18.

## II.     The ALJ's Decision

The ALJ determined that Ms. Ferraro was not disabled under the Social Security Act during the relevant period. R. 28. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[4]

Prior to step one, the ALJ determined that Ms. Ferraro met the insured status requirements of the the Social Security Act .[5] R. 17. At step one, the ALJ confirmed that Ms. Ferraro had not engaged in substantial gainful activity since her alleged disability onset date, June 17, 2017. R. 17. At step two, the ALJ determined that Ms. Ferraro had three severe impairments: disorders of the spine, right upper extremity complex reasonable pain syndrome with muscle/ligament disorder, and fibromyalgia. R. 18. At step three, the ALJ compared Ms. Ferraro's impairments to those contained in the

---

[4] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[5] When an applicant is seeking disability insurance benefits, the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

Social Security Listing of Impairments[6] and found that Ms. Ferraro's impairments, either individually or jointly, did not meet or medically equate to the severity of one of the listed impairments. R. 20–21.

Prior to reviewing step four, the ALJ determined that Ms. Ferraro had the residual functional capacity ("RFC") to perform sedentary work with some limitations.[7] R. 21–27. The ALJ found that Ms. Ferraro can frequently, but not constantly, handle with her right arm and reach overhead with both arms and that she can occasionally push and pull with her right arm. R. 21. The ALJ found that Ms. Ferraro can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. R. 21. The ALJ further determined that Ms. Ferraro must avoid all exposure to hazards including moving machinery and unprotected heights.

At step four, the ALJ determined that Ms. Ferraro was unable to perform any past relevant work, in light of the Vocational Expert's testimony that Ms. Ferarro's RFC precludes past work. R.27. The ALJ then noted that Ms. Ferraro was thirty-five years old on the alleged disability onset date, making her a "younger person"[8] under the guidelines. R. 27. The ALJ acknowledged Ms. Ferraro had at least a high school

---

[6] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

[8] 20 C.F.R. 404.1563.

education and that transferability of job skills was not material to the determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the clamiant is 'not disabled,' whether or not the claimant has transferrable job skills." R. 27 (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy" that Ms. Ferraro can perform including the jobs of a Call-Out Operator (DOT 237.367-014) or an Election Clerk (DOT 205.367-030). R. 28. The ALJ ultimately concluded that Ms. Ferraro was not disabled during the relevant period. R. 29.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during

the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached her decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. App'x. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Ms. Ferraro, through counsel, presents two issues for my review. She first alleges that the ALJ "erred as a matter of law by unduly relying on the opinion of the state agency medical consultants and her own medical expertise" while failing to properly consider the opinion of Ms. Ferraro's treating rheumatology provider. Pl. Br. at 6–11. Ms. Ferraro then alleges that the ALJ's treatment of her subjective testimony concerning her impairments and their effect on her ability to work is not supported by substantial evidence. Pl. Br. at 11–13. The Commmissioner responds that the final decision is supported by substantial evidence and should be affirmed. Comm. Br. at 1. For the reasons discussed below, I find that the ALJ's decision accounts for all evidence of record and is soundly reasoned, and free from legal error.

I.  **The ALJ properly considered the medical source opinion provided by Ms. Ferraro's treating reumotology provider.**

Ms. Ferraro alleges that the ALJ erred by rejecting a medical source opinion from her rheumatological nurse practitioner Jamie Lobbenberg, CRNP, and otherwise violating the guidance in Social Security Ruling 12-2 ("SSR 12-2") for the evaluation of fibromyalgia. Pl. Br. at 9–11. The Commissioner responds that Ms. Lobbenberg's opinion is not entitled to special deference under the SSA regulations and that the ALJ properly concluded that it "was not supported by nor consistent with the record as they

7

were inconsistent with her own [treatment] records as well as with the longitudinal record." Comm. Br. at 7.

On March 4, 2020, Ms. Lobbenberg completed a "Medical Source Statement" questionnaire indicating her assessment of Ms. Ferarro's "ability to do work-related activities on a regular and continuous basis." R. 650. The questionnaire required Ms. Lobbenberg to check boxes indicating whether Ms. Ferraro can "never," "occasionally," "frequently," or "continuously" perform certain work-related activities. R. 650. Ms. Lobbenberg indicated that Ms. Ferraro would be able to occasionally reach, handle, finger, feel, and push/pull with her right hand and that she could frequently handle with her left hand but that she could never reach overhead with either hand. R. 652. Regarding postural limitations, Ms. Lobbenberg determined that Ms. Ferraro could occasionally climb stairs and ramps, balance, stoop, kneel, or crouch but that she could never climb ladders or scaffolds or crawl. R. 653. Regarding environmental limitations, Ms. Lobbenberg determined that Ms. Ferraro could never tolerate unprotected heights, moving mechanical parts, extreme heat, or vibrations. R. 654.

In dismissing the Medical Source Statement, the ALJ explained that Ms. Lobbenberg's recommended manipulative limitations "are neither well supported by Ms. Lobbenberg's own rheumatology treatment records nor consistent with the overall evidence available at the hearing level." R. 26. Ms. Ferraro asserts that the ALJ's rejection of the statement was "legally impermissible" because, as "a Medical Source Statement from Plaintiff's treating rheumatologist nurse practitioner, . . . [t]his source should have been controlling." Pl. Br. at 9. Ms. Ferraro's argument misstates the law.

A medical source opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she] [has] one or more

8

impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). Ms. Ferraro applied for benefits after March 17, 2017, thus the relevant regulations provide that, when evaluating medical source opinions, the ALJ must articulate how she considered the medical opinion including "how persuasive [she] find[s] a medical source's medical opinions" to be. 20 C.F.R. § 416.920c(b). In doing so, the ALJ should consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). Unlike previous versions, the applicable Social Security regulations do not require that medical opinions from treating sources be afforded "controlling weight," as Ms. Ferraro suggests. *Compare* 20 C.F.R. § 404.1520c(a) (new regulation) *with* § 404.1527 (old regulation). "While the ALJ is, of course, not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

The ALJ considered Ms. Lobbenberg's opinion and found that it was not supported by the medical records, including Ms. Lobbenberg's own treatment records. The ALJ explained that, while Ms. Lobbenberg's records state that Ms. Ferraro has "18/18 tender points" those same records indicate that Ms. Ferraro's symptoms are often mild and that her biggest issue is fatigue. R. 26. The ALJ further found that Ms. Lobbenberg's conclusions regarding Ms. Ferraro's limitations were "out of proportion to other records found at the hearing level" as medical records from other sources indicate that Ms. Ferraro's treatment has been "largely routine and

9

conservative" and that "her fibromyalgia pain is noted to be well managed on Naproxen and Trazodone." R. 26 (citing R. 467). The ALJ addressed Ms. Lobbenberg's assessment and sufficiently explained her reasons for finding it unpersuasive. She explicitly determined that Ms. Lobbenberg's conclusions regarding Ms. Ferraro's functional limitations contradicted the record. In doing so, she pointed to specific contrary facts. Accordingly, the ALJ did not err in finding Ms. Lobbenberg's opinion unpersuasive. *See e.g., Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting the Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts).

Compliance with SSR 12-2 does not require the ALJ provide special deference to a fibromyalgia patient's rheumatology provider as Ms. Ferraro suggests. SSR 12-2 recognizes that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues[.]" *Titles II & Xvi: Evaluation of Fibromyalgia*, SSR 12-2P (S.S.A. July 25, 2012). Due to the nature of fibromyalgia, the SSA instructs that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.* In addition to obtaining evidence from a physician, the SSA may consider evidence from psychologists and nonmedical sources to evaluate the severity and functional effects of the impairment. *Id.* The SSA may also order a consultive examination to help "asses the severity and functional effects" of fibromyalgia. *Id.* Contrary to Ms. Ferraro's suggestion, the ALJ may "rely on the [consultive examination] report even if the person who conducts the [consultive examination] did not have access to longitudinal evidence if . . . the [consultive examination] is the most probative evidence in the case record." *Id.*

10

Here, the ALJ found that the consultive examination by state agency medical consultant Judy Kleppel, M.D. was persuasive and that Dr. Kleppel's suggested limitations "are generally supported by the evidence available to Dr. Kleppel at the time she rendered her opinion[.]" R. 25. As discussed further below, the ALJ's treatment of Dr. Kleppel's opinion is consistent with the SSA regulations and comports with the guidance outlined in SSR 12-2. I find no error.

Regardless, the differences between Ms. Lobbenberg's recommendation and the ALJ's RFC finding are not so significant that they warrant upsetting the ALJ's findings. Both the ALJ and Ms. Lobbenberg determined that Ms. Ferraro was limited to a reduced range of sedentary work. They disagree only on the extent of her limitations. *See* R. 26. Where Ms. Lobbenberg indicated that Ms. Ferraro would be able to only occasionally reach, handle, finger, feel, and push/pull with her right hand and that she could frequently handle with her left hand but could never reach overhead with either hand (R. 652), the ALJ found that Ms. Ferraro can frequently, but not constantly, handle with her right arm and reach overhead with both arms and that she can occasionally push and pull with her right arm (R. 21). Ms. Lobbenberg and the ALJ are otherwise in alignment regarding Ms. Ferraro's postural and environmental limitations. *See* R. 21, 653–654.

My review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranaft*, 181 F. 3d at 360 (citing 42 U.S.C. § 405(g)). Because the ALJ reached a reasonable conclusion under the appropriate regulatory scheme and properly explained why she found Ms. Lobbenberg's opinion to be unpersuasive, I find no error here.

11

## II. Substantial evidence supports the ALJ's finding that Ms. Ferraro was not disabled.

Having determined that the ALJ appropriately weighed Ms. Lobbenberg's Medical Source Statement, I find that the ALJ's opinion is supported by substantial evidence.

At step two, the ALJ determined that Ms. Ferraro had three severe impairments: disorders of the spine, right upper extremity complex regional pain syndrome with muscle/ligament disorder, and fibromyalgia. R. 18. A severe impairment occurs when there is an "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions; "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b). I disagree with Ms. Ferraro that the ALJ "failed to consider the nature of fibromyalgia" in reaching her conclusion at step two. *See* Pl. Br. at 8. Rather, the ALJ determined that each of the above three medically determinable impairments, including fibromyalgia, "significantly limit the ability to perform basic work activities[.]" R. 18.

The ALJ went on to explain that Ms. Ferraro's headaches, left breast disorder, left hip disorder, gastroesophageal reflux disease, ovarian cyst, vascular disorder, urinary disorder, secondary hypertension, and status-post right knee contusion were not severe because the record "does not substantiate more than minimal work-related limitations from any of the above-noted conditions." R. 18. Likewise, she found that Ms. Ferraro's post-concussive syndrome, acute stress reaction, panic disorder, and trauma and

stressor related disorder "singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." R. 18. In making this finding, the ALJ "considered the broad functioning areas of mental functioning set out in the disability regulations for evaluating mental disorder and in the Listing of Impairments[.]" R. 18. The ALJ concluded step two by noting that, while Ms. Ferraro's orthopedic records note bilateral knee pain, "[o]verall the record does not actually confirm a knee disorder as a medically determinable impairment." R. 20.

At step three, the ALJ determined that Ms. Ferraro's impairments did not meet or medically equal the criteria of Listing 1.04 (Disorders of the Spine), Listing 1.02 (Major Dysfunction of a Joint Due to Any Cause); or any listing under the guidance provided in SSR 12-2. R. 20–21. The ALJ's analysis outlined the evidence needed to establish an impairment under these listings and considered whether Ms. Ferraro's conditions satisfied their criteria. *Id.* (citing 20 C.F.R. 404, Subpart P, App'x. 1).

Ms. Ferraro alleges that the ALJ erred in evaluating her fibromyalgia, so that is where I will focus my analysis. SSR 12-2 instructs that, because fibromyalgia is not itself a listed impairment the ALJ must "determine whether [fibromyalgia] medically equals a listing (for example listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2. The guidance makes clear that fibromyalgia is evaluated under the same well-established sequential evaluation process as all other impairments. SSR 12-2 merely acts as a guide for the analysis of these challenging claims under the existing regulations.

13

In reaching her step three conclusion, the ALJ noted:

> While there is no listing directly applicable to fibromyalgia, the claimant's fibromyalgia has been evaluated with respect to the guidance provided in SSR 12-2 to see if it medically equals a listing either alone or in combination with another impairment. The claimant was properly diagnosed with fibromyalgia by a rheumatologist. However, the evidence does not demonstrate that the claimant's fibromyalgia medically equals any of the listed impairments, either alone or in combination with any other impairment(s). the claimant's fibromyalgia is noted to be well managed with Naproxen and Trazodone. As such, the claimant does not equal any listings as a result of her fibromyalgia.

R. 21. The ALJ's step three analysis considered the guidance in SSR 12-2 and properly evaluated Ms. Ferraro's symptoms. I find no error in her analysis.

Prior to step four, the ALJ determined Ms. Ferraro's residual functional capacity, or "the most [Ms. Ferraro] can still do despite [her] limitations." 20 C.F.R. § 416.945. After careful consideration of the entire record, the ALJ concluded that Ms. Ferraro has the residual functional capacity to perform sedentary work, subject to certain postural and environmental limitations. R. 21–27. The ALJ found that Ms. Ferraro can frequently, but not constantly, handle with her right arm and reach overhead with both arms, that she can occasionally push and pull with her right arm, and that she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. R. 21.

The ALJ spent more than six pages reviewing the evidence in the record. *See* R. 21–27. Such evidence included Ms. Ferraro's testimony and function report (R. 21–22, 25 (citing R. 258–269)); imaging and ultrasounds from 2017 and 2018 (R. 22, 24 (citing R. 405–450, 344, 347, 350, 356, 359, 361, 363–365)); orthopedic records from June 2017 (R. 23 (citing R. 367–404)); physical therapy records from 2017 and 2018 (R. 23 (citing R. 325–343, 656–772)); neurology records from 2017 and 2018

(R. 23–24 (citing R. 344–359)); rheumatology records beginning in 2018 (R. 24 (citing R. 585–634, 773–783, 803–805, 806–808)); the Medical Source Statement provided by Jamie Lobbenberg, CRNP (R. 26 (citing R. 650–655); and assessments from two state medical consultants (R. 25–26 (citing R. 78–88, 89–99, 102–111, 112–121)). In light of the evidence, the ALJ determined that Ms. Ferraro's "assertions of disability are inconsistent with the record as a whole." R. 27. While the ALJ acknowledged that the medical and other evidence shows that Ms. Ferraro experiences some limitations, she concluded that Ms. Ferraro is "not limited to the extent alleged." R. 27.

      The ALJ's well-reasoned analysis of the relevant medical opinions does not substitute her opinion for that of the experts, as Ms. Ferraro suggests. SSR 12-2 instructs that, when determining a claimant's residual functional capacity, the ALJ must "consider a longitudinal record wherever possible because the symptoms of [fibromyalgia] may wax and wane so that a person may have 'bad days and good days.'" SSR 12-2. The ALJ did just that by reviewing the full range of Ms. Ferraro's medical records which acknowledge that Ms. Ferraro "began orthopedic treatment in July 2017 related to complaints of pain in her neck, bilateral wrists, lower back, and right knee" (R. 23) but was not formally diagnosed with fibromyalgia until October 2018 (R. 24). Taking the full record into consideration, the ALJ determined that Ms. Ferraro's disorders of the spine would be reasonably accommodated by her restriction to sedentary work with certain additional postural and environmental restrictions and that her upper extremity disorder and fibromyalgia would be reasonably accommodated by adding additional manipulative restrictions. R. 27.

      The ALJ did not ignore Ms. Ferraro's subjective testimony regarding the extent of her symptoms as Ms. Ferraro suggests. Rather, in reaching her RFC determination, the

15

ALJ considered both the objective medical evidence and Ms. Ferraro's testimony regarding her activities of daily living. R. 25. It is clear that Ms. Ferraro's fibromyalgia-related limitations were properly accounted for in her RFC, and I find no error.

The ALJ went on to discuss the persuasiveness of various medical opinions in the record. The ALJ found the opinion of state medical consultant Judy Kleppel, M.D. to be "persuasive," the opinion of state medical consultant Isabella, Picciotti, M.D. to be "less persuasive," and the opinion of Jamie Lobbenberg CRNP to be "unpersuasive." R. 25–26. As discussed, the ALJ discounted Ms. Lobbenberg's assessment because she determined that Ms. Lobbenberg's recommended manipulative limitations "are neither well supported by Ms. Lobbenberg's own rheumatology treatment records nor consistent with the overall evidence available at the hearing level." R. 26. In contrast, the ALJ found the opinion of Dr. Kleppel to be "generally supported by the evidence available to Dr. Kleppel at the time she rendered her opinion" but determined that "ongoing rheumatology visits and primary care treatment after the time this opinion was entered, as well as the claimant's testimony" support greater environmental limitations than recommended by Dr. Kleppel. R. 25–26. Finally, the ALJ found the opinion of Dr. Picciotti to be "less persuasive" because Dr. Picciotti indicated Ms. Ferraro would be limited to a range of light exertional work. R. 26. The ALJ disagreed with Dr. Picciotti's conclusion and determined that "the overall evidence, including the various imaging studies, the treatment, and the claimant's testimony, supports the claimant being more limited than this to the sedentary exertional level." R. 26.

The ALJ ultimately concluded, after careful consideration of the record, including Ms. Ferraro's hearing testimony, that Ms. Ferraro "has the residual functional capacity

16

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can frequently, but not constantly, handle with the right upper extremity and reach overhead with both upper extremities. She can occasionally push and pull with the right upper extremity. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders ropes or scaffolds; and must avoid all exposure to hazards including moving machinery and unprotected heights." R. 21.

At step four, the ALJ determined that Ms. Ferraro is unable to perform any past relevant work. R. 27. In reaching this conclusion, the ALJ relied on testimony from the Vocational Expert who noted that the responsibilities of Ms. Ferraro's prior roles as a cook helper and as a supermarket clerk exceed the demands of her residual functional capacity. R. 27.

At step five, the ALJ concluded that "there are jobs that exist in the national economy" that Ms. Ferraro is capable of performing considering her age, education, experience, and RFC. R. 28. Over a page of the opinion is dedicated to reviewing the available alternative work and Ms. Ferraro's capacity to perform it. R. 28–29. The ALJ noted that, while the Vocational Expert's testimony was inconsistent with the information contained in the Dictionary of Occupational Titles, any discrepancy was explained by the fact that the DOT "does not address overhead reaching or break down handling into each individual hand" as in Ms. Ferraro's RFC. R. 28. The ALJ found that the testimony was nonetheless reliable because the Vocational Expert based her overall occupational assessment on her experience including her knowledge of "working conditions and the physical and mental demands of various occupations; transferability of skills; knowledge of the existence and numbers of jobs at all exertional levels in the national economy; and involvement in or knowledge of placing adult workers into jobs."

17

R. 28. The Vocational Expert testified that, given her age, education, work experience, and RFC, Ms. Ferraro would be able to perform the requirements of the following representative occupations: Call-Out Operator (SVP 2, sedentary) and Election Clerk (SVP 2, sedentary). R. 28.

The ALJ ultimately determined that Ms. Ferraro was not under a disability, as defined in the Social Security Act, during the relevant period. Because the ALJ's decision was reasonably supported by substantial evidence, I will uphold her decision and deny Ms. Ferraro's claim for relief.

## CONCLUSION

Because I find no error in the ALJ's analysis, the decision of the ALJ is affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

BY THE COURT:

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**